UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WILLIAM BERRY DEAN, III,<br><br>　*Appellant*,<br><br>v.<br><br>SCOTT M. SEIDEL,<br><br>　*Appellee*. | §<br>§<br>§<br>§<br>§　Civil Action No. 3:20-CV-01834-X<br>§<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Appellant William Berry Dean, III's Appeal of the Bankruptcy Court's *Order Granting Trustee's Motion to Approve (1) Employment of Special Counsel Nunc Pro Tunc to March 30, 2020, (2) Acknowledgement and Informed Consent to Any Conflicts of Interest, and (3) Litigation Funding Agreement* entered on June 29, 2020. [Doc. No. 1]. The issue raised by this appeal is whether a Chapter 7 bankruptcy trustee may grant a 30% interest in the bankruptcy estate's litigation recoveries to a creditor in the bankruptcy case in exchange for that creditor advancing funds for the litigation, even if the creditor will also be reimbursed for making those advances. After careful consideration, and as explained below, the Court **AFFIRMS** the Bankruptcy Court's decision.

I. Background

The facts of this appeal are not in dispute. The appellee, William Berry Dean, III, filed for Chapter 7 bankruptcy in 2019, and the Court appointed the appellant, Scott M. Seidel, to administer the bankruptcy estate. Reticulum Management, LLC

1

(Reticulum) is a creditor in the bankruptcy case and objected to discharge of its claims against Dean. Despite this relationship, Seidel and Reticulum entered into a Litigation Funding Agreement (the Agreement). Under the terms of the Agreement, Reticulum will advance up to $200,000 for litigation fees to prosecute claims against third parties. All recoveries from these claims will then be used to: (1) pay Seidel's statutory commission and allowed expenses, (2) reimburse Reticulum, (3) pay Reticulum a 30% "investment return,"[1] and (4) pay pro rata Dean's creditors.

In other words, the Agreement entitles Reticulum to the reimbursement of its expenses, 30% of all recoveries, *and* its pro rata share as one of Dean's creditors. This structure would conceivably allow Reticulum to assume the position of a super-creditor, receiving more than the pro rata share it is entitled to under the Bankruptcy Code.[2]

## II. Legal Standard

District courts (like this Court) have jurisdiction to hear appeals from final judgments of bankruptcy courts.[3] The Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.[4] The Court finds clear error when "upon examination of the entire evidence [the Court] is left with the definite and firm conviction that a mistake has been committed."[5]

---

[1] Doc. No. 3 at 11.

[2] *See* 11 U.S.C. § 726(b).

[3] 28 U.S.C. § 158(a)(1).

[4] *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008).

[5] *Justiss Oil Co., Inc. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996).

III. Analysis

Dean argues that: (1) no authority supports the Agreement and (2) the Agreement "violates or circumvents the Bankruptcy Code."[6] Specifically, Dean claims that the Agreement "enables Reticulum to receive a disproportionate and larger share of distributions to be made to creditors by [Seidel] from [Dean]'s bankruptcy estate—thus violating the priority scheme of Section 507 . . . and the equality of distribution requirements of Section 726."[7] In addition, Dean asserts that the Agreement violates Section 550 because by granting Reticulum a 30% interest in gross litigation proceeds, "a significant portion of any avoidance recoveries will not be for the benefit of the estate and will not be used to satisfy or pay the claims of any creditors . . . ."[8]

Naturally, Seidel disagrees. In response, Seidel claims that: (1) without Reticulum's assistance, he "would not have the financial means to pursue estate causes of action," (2) the Agreement does not violate the Bankruptcy Code, and (3) courts routinely approve similar "debtor in possession financing agreements" in Chapter 11 cases.[9]

The Bankruptcy Court held a hearing to discuss, among other things, the Agreement. During that hearing, Seidel's counsel pointed out that "courts do approve litigation funding agreements in Chapter 7 cases," and directed the Bankruptcy

---

[6] Doc. No. 3 at 13.

[7] *Id.*

[8] *Id.* at 14.

[9] Doc. No. 7 at 16–17.

Court to *Bronson Masonry, LLC v. United States Trustee*, in which it had also approved a litigation-funding agreement.[10]

On cross-examination, Seidel explained that he reached out to multiple firms regarding pursuing the claims on a contingency-fee basis, but none were interested "in light of the history here, trying to have to bust trusts."[11] In other words, Seidel formed the Agreement with Reticulum because he could not negotiate a contingency-fee arrangement. Seidel also explained that he has "done [litigation-funding agreements] several times."[12] Even so, he admitted that he has not "seen anybody else do it" and does not "have a great feel for what's out there in the marketplace other than what [he has] done."[13]

In an oral ruling, the Bankruptcy Court approved the Agreement, noting that Seidel endeavored to obtain favorable terms but had limited options given the lack of unencumbered cash on hand and law firms' lack of interest. The Bankruptcy Court explained that although it was "approving [the Agreement] under 327 and 328 . . . it's a bit like a 363 transaction or even a 364 transaction."[14] In making its ruling, the Bankruptcy Court cited no authority for the Agreement, aside from its own previous approval of a funding agreement in a different bankruptcy case.

---

[10] *See* 3:15-BK-34713 at Doc. No. 50.

[11] *In re William Berry Dean, III*, 3:19-BK-31232, Doc. No. 74 at 17.

[12] *Id.* at 15.

[13] *Id.* at 20.

[14] *Id.* at 27.

4

Litigation-funding agreements, in general, are still relatively novel funding arrangements. In fact, they are so novel in bankruptcy proceedings that even Seidel was unaware of anyone other than him employing them. For example, a Westlaw search for "litigation funding agreement" yields just 53 federal cases—none of which are from this District or the Fifth Circuit.[15] And there are legitimate ethical concerns with their use.[16] The lack of any supporting caselaw in approval of the Agreement, the novelty of the Agreement, and the Agreement's possible incompatibility with provisions of the Bankruptcy Code causes this Court concern.

That being said, after careful examination of the Bankruptcy Code, the Court is not "left with the definite and firm conviction that a mistake has been committed."[17] It therefore **AFFIRMS** the decision of the Bankruptcy Court.

**IT IS SO ORDERED** this 20th day of April 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[15] THOMPSON REUTERS WESTLAW EDGE, https://1.next.westlaw.com/Search/Home.html?transitionType=Default&contextData=%28sc.Default%29 (search "Litigation Funding Agreement;" then select "Cases" under "Content types").

[16] *See generally* Paul A. Stewart, *Ethical Concerns Arising From Litigation Funding Agreements*, ORANGE COUNTY LAWYER, Feb. 2020.

[17] *Justiss Oil*, 75 F.3d at 1062.